**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:14-cv-00040-MR
[CRIMINAL CASE NO. 2:12-cr-00033-MR-DLH-2]**

| | |
|---|---|
| **KENNETH ASHE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | <u>**MEMORANDUM OF**</u> |
| ) | <u>**DECISION AND ORDER**</u> |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate,

Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1].  Also before

the Court are five pending motions to amend filed by Petitioner [Docs. 11,

12, 14, 17, 20]; two motions for an evidentiary hearing [Docs. 16, 25]; a

motion to expand the record [Doc. 23]; a motion for a reduction of his

sentence [Doc. 24]; and a motion for the appointment of counsel [Doc. 29].

## I.    BACKGROUND

On December 11, 2012, Petitioner and several others were arrested

for their participation in a narcotics-trafficking operation led by Petitioner's

nephew, Glenn Ashe.  [Criminal Case No. 2:12-cr-00033 ("CR"), Doc. 73 at

9: PSR].  The organization regularly sold crack cocaine in Western North

Carolina. [Id. at 3-4]. Petitioner regularly assisted his nephew by picking up crack cocaine from one of the organization's suppliers. [Id. at 3-4, 10]. Petitioner also participated in sales of crack cocaine by the organization to others, including several controlled purchases made under the direction of law enforcement in the spring of 2012. [Id. at 4-10].

On March 19, 2013, Petitioner pleaded guilty pursuant to a written plea agreement to one count of conspiracy to possess with intent to distribute crack cocaine. [Id., Doc. 54: Acceptance and Entry of Guilty Plea]. Magistrate Judge Howell conducted an extensive plea colloquy under Federal Rule of Criminal Procedure 11. [CR Doc. 171: Rule 11 Tr.]. The Court placed Petitioner under oath and confirmed that he understood that he could be prosecuted if he gave false information. [Id. at 3-4]. In response to questions from the Court, Petitioner stated under oath that he was, in fact, guilty of the offense to which he was pleading guilty; that his plea was voluntary; and that "[o]ther than the promises contained in the written Plea Agreement" no one had "made any promise" to Petitioner "or threatened [him] in any way to cause [him] to enter [his] plea of guilty against [his] wishes." [Id. at 13-14]. During the colloquy, the Government described the terms of the plea agreement, including the "stipulation as to the amount of crack cocaine" at "226.7 grams," and Petitioner confirmed that he understood

and agreed with the terms of the plea agreement as they were described by the Government. [Id. at 15-16]. The Court also asked Petitioner about his satisfaction with his court-appointed attorney, Rodney Hasty. Petitioner stated, "He's done a good job" and affirmed that he was entirely satisfied with the services of his attorney. [Id. at 17]. Based on what Petitioner and his attorney said during the colloquy, Magistrate Judge Howell accepted Petitioner's guilty plea after finding that "the defendant's plea is knowingly and voluntarily made and that the defendant understands the charges, the potential penalties and the consequences of his plea." [Id. at 18].

After the presentence report was prepared, but before he was sentenced, Petitioner sought the appointment of a new attorney, and attorney Hasty moved to withdraw. [CR Doc. 77, 78]. During a hearing on Hasty's motion to withdraw, Petitioner informed the Court that he did not "agree with the way" that Hasty was representing him. [CR Doc. 172 at 15: Tr. of Hr'g on Hasty Mot. to Withdraw]. Petitioner stated that Hasty, among other things, "intimidates me and stuff, threatens me like I'm going to be getting all this time and stuff." [Id. at 11-12]. After hearing from Petitioner, Judge Howell explained to Petitioner that it sounded like Petitioner disagreed with what Hasty was telling Petitioner would probably be his sentence, and that Hasty was "just trying to be truthful" with Petitioner. [Id. at 12]. Petitioner

agreed with the Court's characterization of events, but persisted in his request for another lawyer, which the Court granted.  [Id. at 12, 16].

Five days after he was appointed, Petitioner's new attorney Eric Foster moved, at Petitioner's request, to withdraw as counsel.  [Id., Doc. 82].  During the hearing that Judge Howell conducted on the motion to withdraw, Foster explained that Petitioner wanted Foster to proceed in a way that Foster believed would have been unethical and would have threatened his license to practice law.  [Id., Doc. 174 at 6; 22: Tr. of Hr'g on Foster Mot. to Withdraw].  Foster informed the Court, "Ashe has a particular way he wants to go . . . that involves making some factual assertions that I'm not comfortable making, partly because I believe them to be false but even more importantly because I believe the end result would be that Mr. Ashe would receive a longer sentence than pursuing any different strategy."  [Id. at 5].  Petitioner personally informed the Court during the hearing that he believed his plea agreement contained false information and that he was "intimidated into doing it."  [Id. at 19-20].  In the light of that information, the Court explained that it would order the appointment of another lawyer, direct that lawyer to file a motion to withdraw Ashe's guilty plea, and provide a copy of the transcript of the hearing to the new lawyer to use in connection with the motion.  [Id. at 24].

On August 22, 2013, the Court appointed Fredilyn Sison to represent Petitioner, and on September 9, 2013, Sison filed a motion to withdraw Petitioner's guilty plea. [CR Doc. 102: Motion to Withdraw Guilty Plea]. The motion asserted, "Mr. Ashe alleges that his plea was not voluntarily and knowingly made." [Id. at 2]. During a subsequent status-of-counsel hearing, however, Sison explained that she could not proceed with Ashe's motion to withdraw his guilty plea because it was frivolous, and her ethical obligations precluded her from presenting frivolous claims. [CR Doc. 177: Att'y Inquiry Hr'g at 8]. Sison stated that as part of her investigation of Petitioner's theory that his plea was unknowing and involuntary because his attorney had intimidated him into signing it, Sison obtained from the Cherokee County Jail recordings of Petitioner's conversations with his former counsel. [Id. at 6-7]. She stated that she personally reviewed those recordings of thirty conversations. [Id.]. She also reported that she had listened to these recordings and reviewed them with Petitioner, and also had an investigator from her office further review them with Petitioner. [Id. at 15-16].

Sison stated that she also investigated and addressed an assertion by Petitioner that the recordings were "doctored." [Id. at 9]. Sison stated that she personally watched Captain Watkins transfer the files from a hard drive at the Cherokee County Jail to a thumb drive. [Id. at 6]. She also informed

the Court that she had confirmed, based on her own conversations with Hasty, that the recorded "conversations were complete." [Id. at 9].

Sison informed the Court, "I couldn't go forward with the Motion to Withdraw his plea because what I had heard on those tapes indicate that it was knowingly and voluntarily made." [Id. at 8]. She further explained that she didn't "believe that any other lawyer could present this case to this Court" because "it would be an ethical violation." [Id. at 17]. Sison explained that she could not present Ashe's motion to withdraw and that, if he wanted to go forward with it, he would have to present it as his own attorney. [Id.].

Petitioner informed the Court that he wanted Sison to continue to represent him. [Id. at 28-29]. After consulting with Petitioner, Sison moved to withdraw the motion to withdraw Petitioner's guilty plea. [Id. at 34-35]. The Court granted that motion. [CR Doc. 126]. In granting the motion, the Court noted that "any ethical attorney is going to have the same opinion as Mr. Hasty, Mr. Foster, and Ms. Sison" about pursuing the matter. [CR Doc. 177 at 33].

On December 6, 2013, Petitioner again appeared before Judge Howell, seeking an order permitting Petitioner to represent himself at his sentencing hearing. [CR Doc. 183: Att'y Inquiry Hr'g]. Petitioner explained that he wanted to pursue the theory that Sison had stated she was ethically

6

precluded from pursuing.  [Id. at 6].  The Court asked Petitioner a series of questions on the record and confirmed that Petitioner understood the charges against him and the maximum penalties; that Petitioner understood that the Federal Rules of Evidence and Federal Rules of Criminal Procedure would apply during his sentencing proceeding; and that he would likely be at a disadvantage if he represented himself.  [Id. at 21, 23].  In light of Petitioner's representations, the Court found that Petitioner "knowingly and voluntarily waived his right to counsel" and entered an order permitting Petitioner to represent himself and appointing Sison as standby counsel. [CR Doc. 141].

Petitioner represented himself during his sentencing hearing on December 11, 2013; however, he did not seek to withdraw his guilty plea or attempt to argue that he entered that plea involuntarily.  [CR Doc. 167: Sentencing Hr'g Tr.].  To the contrary, Petitioner confirmed his answers to the questions that Judge Howell had asked during Petitioner's plea colloquy, stating under oath that he had understood them and had answered them truthfully.  [Id. at 8].  Petitioner also confirmed to the Court that he had pleaded guilty because he was guilty.  [Id. at 9].  In response to the Court's question whether Petitioner's plea was "a result of any threat or any force or any promise other than promises that [we]re in [his] Plea agreement,"

Petitioner said, "No. No, sir." [Id.]. Petitioner also explicitly confirmed that he was "pleading guilty voluntarily." [Id. at 9-10]. Based on Petitioner's representations during his sentencing hearing, this Court found that Petitioner's "plea [was] knowingly and voluntarily made, and that the defendant underst[ood] the charges, potential penalties and consequences of his plea." [Id. at 10].

After hearing from both Petitioner and the Government, this Court sentenced Petitioner to 87 months of imprisonment, the low end of the recommended Guidelines range. [CR Doc. 147: Judgment]. On December 20, 2013, Petitioner filed a pro se notice of appeal. [CR Doc. 151: Notice of Appeal]. A fourth attorney, Carol Ann Bauer, was appointed to represent Petitioner on direct appeal. On appeal, Petitioner argued that he was denied effective assistance of counsel because none of his three attorneys moved for a competency evaluation before seeking to withdraw from representation. On September 9, 2014, the Fourth Circuit affirmed Petitioner's conviction. See United States v. Ashe, 583 F. App'x 155, 155 (4th Cir. 2014).

Petitioner placed the instant motion to vacate in the prison system for mailing on September 13, 2014, and it was stamp-filed in this Court on September 18, 2014. In support of his motion to vacate, Petitioner contends that his appellate attorney was constitutionally deficient for failing to

introduce new evidence during his appeal and that trial counsel Hasty was deficient for allegedly threatening him into pleading guilty, changing the terms of the plea agreement after he signed it, and covering up for these acts. [Doc. 1 at 4-8]. Petitioner additionally contends that trial counsel Sison also rendered ineffective assistance of counsel by tampering with evidence to cover up for attorney Hasty's alleged ineffective assistance of counsel. Since filing the initial motion to vacate, Petitioner has also filed five motions to amend the motion to vacate, seeking to raise additional claims.

## II.   STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).[1]

---

[1] Accordingly, Petitioner's requests for an evidentiary hearing [Docs. 16, 25] are denied.

## III.    DISCUSSION

### A.    Motion to Vacate Based on Ineffective Assistance of Counsel

#### 1.    Standard of Review

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.    See U.S. CONST. amend. VI.    To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.    See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).    In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."    Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"    Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."    Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).    If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."    United States v. Rhynes, 196 F.3d 207,

232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).  Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

## 2.    Claims of Ineffective Appellate Counsel

Petitioner first asserts that appellate counsel rendered deficient performance by declining to introduce new evidence on appeal.  Specifically, Petitioner contends that appellate counsel refused to enter as evidence on appeal a "CD-rom," a statement by Petitioner's nephew, a "statement of probable cause," and evidence of an "unauthorized tax" by the "State."  [Doc. 1 at 5].  He further asserts that his appellate attorney was deficient for raising

on appeal the failure of Petitioner's prior attorneys to challenge his competency.  [Id. at 6].

The Fourth Circuit has recently explained that "[e]ffective assistance of appellate counsel 'does not require the presentation of all issues on appeal that have merit.'"  United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014) (quoting Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008)). Courts should ordinarily only "find ineffective assistance for failure to pursue claims on appeal" when "'ignored issues are clearly stronger than those presented.'"  Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).  The new evidence that Petitioner alleges he sought to present is not clearly stronger than the issue of Petitioner's competency, which his appellate counsel actually raised.  Indeed, even if counsel had attempted to bring in the new evidence on Petitioner's direct appeal, the appellate court would not have considered the evidence because it was not before the district court. Wright v. Southwest Airlines, 319 F. App'x 232, 233 n.2 (4th Cir. 2009) ("[T]his court does not consider evidence that was not before the district court."); Theriot v. Parish of Jefferson, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court may not consider new evidence furnished for the first time on appeal.").  For the same reason, Petitioner cannot establish prejudice, as Petitioner has simply not shown that the outcome would have been different

even if the Fourth Circuit were to consider the new evidence.  Petitioner's ineffective assistance claim based on the performance of his appellate counsel is therefore denied and dismissed.

### 3.    Claims of Ineffective Trial Counsel

Petitioner next contends that attorneys Hasty and Sison rendered ineffective assistance of counsel at the trial level.  For the following reasons, this claim is without merit.

Petitioner first alleges that his first attorney Rodney Hasty threatened Petitioner "with more time," lied to him, and intimidated him to convince him to plead guilty.  [Doc. No. 1 at 7].  He also alleges that Hasty "changed" the plea agreement after he signed it to increase the quantity of crack cocaine for which he was responsible from 63 grams to 226 grams.  [Id.].  Finally, Petitioner alleges that his third attorney Fredilyn Sison "tampered with [the] CDrom to cover for" Hasty's conduct.  [Id. at 8].

Petitioner's allegations are specifically contradicted by several parts of the record.  Petitioner explicitly informed the Court under oath during his plea colloquy that nobody had threatened him in any way to cause him to enter his plea of guilty, and that nobody had made any promises to him other than those contained in the plea agreement.  At the same hearing, Petitioner

further acknowledged that the quantity stipulated in the plea agreement was 226.7 grams of crack cocaine.

Petitioner's statements during his plea colloquy alone are enough to establish that his "contrary allegations in his § 2255 motion are palpably incredible and patently frivolous or false." See United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005). Moreover, the record further contradicts Petitioner's allegations. After he pleaded guilty, Petitioner made allegations to Magistrate Judge Howell during a status-of-counsel hearing similar to the allegations made here. Judge Howell later granted Petitioner's motion to represent himself at his sentencing hearing so that Petitioner could present these allegations, after two attorneys determined that they were frivolous and could not be presented by an ethical attorney. At his sentencing hearing, however, Petitioner explicitly stood by the answers given during his plea colloquy and affirmed that his plea was not the result of any threat, force, or promise other than what was stated in the plea agreement. Petitioner has simply failed to show that his trial attorneys rendered deficient performance.

The Court further finds that, even if Petitioner could show that his trial attorneys rendered deficient performance, his ineffective assistance claims would still fail because he has not alleged that, but for the alleged errors of

these attorneys, he would have proceeded to trial. "[I]n order to prove prejudice in the guilty plea context, a person challenging his conviction must establish 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1995)). Here, Petitioner confirms in his Motion to Vacate that he still wants to plead guilty: "I want to plead guilty to the amounts that I was directly responsible for in the two sales and what was found on me and re-sentenced correctly." [Doc. 1 at 12]. Petitioner "has no right to be offered a plea," Missouri v. Frye, 132 S. Ct. 1399, 1410 (2012), and his failure to allege that but for his counsel's errors he would have gone to trial is fatal to his ineffective assistance of counsel claim. Ellis v. United States, No. 5:09-CR-17, 2011 WL 3503118, at *5 (W.D.N.C. Aug. 10, 2011) (holding that failure to "allege that absent counsel's advice, he would have proceeded to trial instead of pleading" guilty was fatal to claim of ineffective assistance of counsel), appeal dismissed, 465 F. App'x 259 (2012). Petitioner's ineffective assistance claims based on the performance of his trial counsel are therefore denied and dismissed.

### 4. Additional Claims of Ineffectiveness Raised in Motions to Amend

Petitioner first seeks to amend his motion under Section 2255 to add six theories of ineffective assistance of counsel.[2] He argues that his attorneys were constitutionally deficient for failing to argue that he was selectively prosecuted, for failing to seek an evidentiary hearing about or file objections to his presentence report, and for failing to seek a competency evaluation. See [Doc. 11 at 1]. Petitioner also repeats his allegations that his attorneys were constitutionally deficient because one coerced him into pleading guilty and another covered up for the first attorney. See [Doc. No. 14-1 at 1-3]. Petitioner further argues that his attorneys were constitutionally deficient for changing their assessment of whether he would be found to have had a minimal role in the offense after reviewing the Presentence Report and withdrawing from his case. [Doc. 17 at 1]. Finally, Petitioner

---

[2] The amendment of § 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days or within 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). In all other cases, a party must seek leave to amend. Fed. R. Civ. P. 15(a)(2). Although several of Petitioner's motions to amend were filed before 21 days after the United States filed its response on January 26, 2015, Rule 15 entitles Petitioner to only one amendment as a matter of course. Fed. R. Civ. P. 15(a)(1). For the remaining motions to amend, he must show good cause. Even assuming that Petitioner could satisfy the good cause standard, the Court finds that the substantive claims asserted in the motions to amend are without merit. Accordingly, the Court will allow the motions to amend but, for the reasons stated herein, Petitioner's additional claims for relief will be denied and dismissed.

argues that his attorneys were constitutionally deficient for failing to challenge his indictment based on several searches and seizures that he alleges were illegal and led to the filing of the indictment. [Doc. 20 at 1, 2]. The Court will address each of these claims in turn.

Petitioner first alleges that he was "selectively prosecuted," and that his attorneys were ineffective for declining to raise this issue. [Doc. 11 at 1]. Specifically, Petitioner alleges that he was targeted because of his "last name being Ashe or [his] gender." [Id.]. Petitioner also alleges that he was selectively prosecuted based on his contention that his co-conspirators received lower sentences than he received. [Doc. 17 at 1].

Petitioner's argument that his attorneys were constitutionally deficient for declining to raise a challenge on grounds of selective prosecution fails for two reasons. First, Petitioner waived this argument by pleading guilty. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004)). Such defects include claims of selective prosecution. See United States v. Knight, 96 F.3d 307, 309 (8th Cir. 1996). They also include claims of pre-plea ineffective assistance of counsel about a matter that does not affect the voluntariness of the decision to plead

guilty.  See Moussaoui, 591 F.3d at 279 (holding that arguments alleging pre-plea Sixth Amendment violations were "not cognizable" because the defendant's guilty plea had waived them); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1296 (4th Cir. 1992) (holding that a guilty plea waived a claim of the denial of constitutionally required counsel "that occurred prior to" the guilty plea and was "unrelated to it"); see also Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) ("[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. This includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.").    Petitioner's theory that counsel rendered deficient performance by declining to raise a selective prosecution claim does not relate to whether his guilty plea was unknowing or involuntary.  Petitioner's guilty plea, therefore, waived any challenge based either on selective prosecution or ineffective assistance for failure to raise selective prosecution. Accord United States v. Knight, 96 F.3d 307, 309 (8th Cir. 1996) (holding that defendant waived his selective prosecution claim by entering an unconditional guilty plea); United States v. Suter, 755 F.2d 523, 527 (7th Cir. 1985) (same).

In any event, Petitioner's selective prosecution claim is without merit. A selective prosecution claim is "not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). "The government ordinarily has wide latitude in deciding whether to prosecute. However, equal protection forbids basing the decision on an unjustifiable standard such as race, religion or other arbitrary classification." United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012) (internal quotation marks omitted). To overcome "the presumption that a prosecutor has not violated equal protection," Petitioner has a "high" burden to "establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." Id. (quoting United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996)).

Even if his selective prosecution claim were not waived, Petitioner could not establish that he was the victim of selective prosecution. In support of his claim, Petitioner identifies three other individuals, Glen Ashe, Kristy Dawn Franks, and Leslie Blakely, whom he alleges received more lenient sentences than he did. All of these individuals, however, were prosecuted and convicted based on their respective roles in the conspiracy.

Furthermore, Petitioner cannot establish that the decision to prosecute him was invidious or in bad faith. His conclusory allegation that he "feel[s] that the prosecutor selectively prosecuted [him]" is insufficient as a matter of law. United States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004) ("'Airy generalities, conclusory assertions and hearsay statements do not suffice' to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing.") (quoting United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987)).

In sum, Petitioner's attorneys were not constitutionally deficient for declining to raise a meritless selective prosecution challenge. Petitioner has not identified anything that would have suggested to a reasonable attorney that his theory was viable, and he cannot establish prejudice because he cannot establish a reasonable probability either that he would have foregone his guilty plea to pursue the theory or that his theory would have been successful.

Petitioner next alleges that his attorneys were constitutionally deficient for failing to file objections to or seek an evidentiary hearing to challenge his presentence report. [Doc. 24 at 1]. As explained in the Government's initial response to Petitioner's motion under Section 2255, Petitioner pleaded guilty to a drug-trafficking conspiracy pursuant to an agreement stipulating that Petitioner was responsible for 226.7 grams of crack cocaine. [Doc. 15 at 3].

Petitioner knowingly and voluntarily waived his right to counsel, and this Court permitted Petitioner to represent himself at his sentencing hearing.  [Id. at 6].  The presentence report, which the Court adopted, determined that the drug amount to which Petitioner stipulated in his plea agreement called for a base offense level of 30.  [CR Doc. 73 at 11].  The only adjustments the report called for were a reduction of three offense levels for acceptance of responsibility.  [Id.].

Petitioner cannot establish that his attorneys were constitutionally deficient for failing to object to the presentence report.  First, Petitioner waived his right to be represented by counsel at his sentencing hearing, and "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  Faretta v. California, 422 U.S. 806, 834 n.46 (1975).  Second, an attorney is not constitutionally deficient for declining to pursue a strategy that is fruitless or potentially harmful.  See Harrington v. Richter, 562 U.S. 86, 108 (2011).  Here, it would have been reasonable for an attorney to conclude that a challenge to Petitioner's presentence report would have been fruitless and potentially harmful.  Petitioner would likely have remained bound by the drug quantity in his plea agreement, but a challenge might have risked jeopardizing the adjustment he received for acceptance of

responsibility.  See, e.g., U.S.S.G. § 3E1.1 cmt. n.1(A) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.").  Petitioner has not identified any objection to his presentence report that had a reasonable probability of success. Accordingly, even if Petitioner had not waived his right to counsel (and thus effective assistance) at his sentencing, a failure to challenge the presentence report would not have been objectively unreasonable or prejudicial.

Petitioner next contends that his "attorneys should have had [him] evaluated" because he "was suffering from several mental defects."  [Doc. 11 at 2].  In a criminal prosecution, either party may move for a hearing to determine the mental competency of a defendant. 18 U.S.C. § 4241(a). Such motion requires the court to order a competency hearing only "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent."  Id. The Court may also order a hearing on its own motion.  Id.  Under the applicable standard, a defendant is incompetent if he is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  Id.  The pursuit of a "frivolous" or "ill-advised" legal strategy does not alone provide reasonable cause to question

a defendant's competency.  <u>United States v. Banks</u>, 482 F.3d 733, 742-43 (4th Cir. 2007).

As explained in the Government's initial response to Petitioner's motion under Section 2255, Petitioner was represented by three different attorneys in his criminal case, and appeared before this Court on numerous occasions, during which Magistrate Judge Howell and this Court interacted directly with Petitioner.  [Doc. 15 at 2-8].   None of Petitioner's attorneys nor this Court identified cause to believe that Petitioner was then suffering from any issue rendering him mentally incompetent.  Furthermore, Petitioner has not identified anything that would have caused a reasonable attorney to conclude that a motion for a competency hearing would have been fruitful, nor has he shown any evidence demonstrating a reasonable probability that he would have been found incompetent and that his sentence or conviction would have been vacated.  Petitioner mentions a "mental assessment that was conducted during the time of the conspiracy," [Doc. 11 at 2], presumably referring to the mental health evaluation described in the presentence report. [<u>See</u> CR Doc. 73 at 23].  That evaluation, conducted in 2000, revealed that Petitioner suffered from bipolar disorder and depression.   [<u>Id.</u>].   Nothing about the 2000 evaluation, however, indicated that Petitioner was "presently suffering from a mental disease or defect" at the time of his criminal

prosecution in 2013. 18 U.S.C. § 4241(a). Furthermore, nothing about the 2000 evaluation indicated that Petitioner ever suffered from an infirmity that rendered him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id.

Petitioner next contends that his attorneys were constitutionally deficient because one coerced him into pleading guilty and another covered up for the first attorney. [Doc. 14-1 at 1-3]. This claim fails as a matter of law. Petitioner's allegations that he was threatened into pleading guilty are explicitly contradicted by Petitioner's statements under oath during his plea colloquy, which he affirmed when this Court reviewed that colloquy prior to sentencing him. Furthermore, Petitioner cannot establish prejudice, as he has not alleged that, but for his attorney's conduct, he would have proceeded to trial.

Petitioner also contends that trial attorney Hasty rendered deficient performance in various ways. [Doc. 17 at 1]. Specifically, Petitioner contends that Hasty told Petitioner that he "would receive a downward departure for [his] minimal role in the activities." [Id.]. Petitioner contends that when the presentence report was issued, Hasty then "changed his story" and told Petitioner that the Government was not willing to give Petitioner a reduction in sentence for having a minimal role. [Id.]. Petitioner alleges that

attorney Hasty "then withdrew from the case, and refused to try to challenge the PSR, or withdraw [Petitioner's] plea." [Id.].

Petitioner's allegations are insufficient to establish that his attorney was constitutionally deficient. Even assuming the truth of Petitioner's allegation that his attorney told him he would receive an adjustment for a "minimal role", Petitioner's plea agreement expressly stated that "any estimate of the likely sentence is a prediction rather than a promise" and that there were no agreements, representations, or understandings between the parties other than those set forth in the plea agreement. [CR Doc. 48 at 2, 7: Plea Agreement]. Moreover, Petitioner does not even purport to allege that, but for his attorney's prediction, he would have pleaded not guilty and proceeded to trial, nor could he reasonably make such an allegation. The plea agreement explicitly states what findings and conclusions the parties would recommend to the Court with respect to Petitioner's sentence, and a downward adjustment based on his role is not among them. [Id. at 2].

Petitioner also cannot establish that attorney Hasty was constitutionally deficient for withdrawing from his case and failing to object to the presentence report. Petitioner sought to represent himself at sentencing and waived his right to counsel. [Doc. 15 at 6-7]. Petitioner, therefore, cannot

"complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  Faretta, 422 U.S. at 834 n.46.

Finally, in his motion to amend filed on March 27, 2015, Petitioner contends that his attorneys were constitutionally deficient for failing to challenge several searches and seizures that he alleges led to his indictment.  [Doc. 20 at 1, 2].  He alleges, in conclusory and speculative fashion, that the indictment was based on the fruits of a number of different searches and seizures, the fruits of which should have been suppressed. [Id.].  Petitioner's argument fails for the following reasons.

First, any claim that Petitioner's attorneys were deficient for declining to move to suppress evidence that led to Petitioner's indictment was waived by Petitioner's guilty plea.  United States v. Devaughn, 73 F. App'x 627, 628 (4th Cir. 2003) (per curiam) ("[A] knowing and voluntary guilty plea waives antecedent non-jurisdictional errors, including claims of unlawful search and seizure.") (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  In any event, Petitioner's claim is without merit.  Petitioner points to nothing, other than his own conclusory allegations and speculation, indicating that his indictment was based on evidence from any illegal search or seizure that he had standing to challenge.  [Doc. 20 at 1, 2].  Moreover, any challenge to Petitioner's indictment would have been meritless in any event.  "[A] facially

valid indictment is not subject to dismissal simply because the grand jury may have considered improper evidence, or because it was presented with information or evidence that may contravene a constitutional privilege." <u>In re Grand Jury Subpoena (T-112)</u>, 597 F.3d 189, 196 (4th Cir. 2010). Furthermore, Petitioner has not alleged that, but for his attorney's errors, he would not have pleaded guilty and instead would have proceeded to trial in order to pursue a challenge to the indictment. Accordingly, Petitioner cannot establish that any decision by his attorneys not to challenge the searches and seizures alleged by Petitioner was objectively unreasonable, or that Petitioner suffered any prejudice as a result.

### B. Motion to Vacate Based on Claim of Entrapment

Petitioner next contends that he was somehow "entrapped" by "the Government's persistent and repeated efforts to purchase drugs from their target," Glen Ashe. [Doc. 17 at 1]. This claim fails. First, Petitioner waived any challenge to this non-jurisdictional alleged defect by pleading guilty. <u>See Moussaoui</u>, 591 F.3d at 279. Second, "[a] claim of entrapment is not cognizable in a § 2255 motion because it 'presents no constitutional claim.'" <u>Grayson v. United States</u>, No. 97cv2963(RWS), 1997 WL 695566, at *3 (S.D.N.Y. Nov. 6, 1997). Finally, Petitioner forfeited any entrapment argument by failing to raise it during his criminal case and on direct appeal,

and he has not even purported to allege the kind of cause and prejudice or actual innocence that would excuse his procedural default. See Jackson v. United States, 638 F. Supp. 2d 514, 601 (W.D.N.C. 2009). Accordingly, Petitioner's claim for entrapment is denied and dismissed.

## C.  Request for Discovery

In his motion to amend filed on January 5, 2015, Petitioner asks this Court to "enter into [the] record" notes of an interview dated December 13, 2013, in which Petitioner's family members were interviewed in preparation of sentencing. [See Docs. 12, 13]. Petitioner's motion to amend also requests an "order granting [him] access to the phone conversation[s] that are stored at Cherokee Co. Detention and the flash drive where they were download[ed] from a CD Rom." [Doc. 12 at 1]. Petitioner asserts that this information relates to an effort to "cover up lies" that Petitioner's trial counsel Rodney Hasty told Petitioner and which "resulted in a[n] involuntary and unknowing plea." [Id.].

This Court may authorize discovery in this proceeding only if Petitioner is able to show "good cause," which requires a "prima facie case for relief." Roane, 378 F.3d at 403. Petitioner is not entitled to discovery because the record conclusively shows that Petitioner is not entitled to any relief under Section 2255. Petitioner's discovery request relates to Petitioner's

allegations that attorney Hasty threatened Petitioner into pleading guilty and that attorney Sison covered up that evidence. As the Court has already found, these allegations are palpably incredible and contradicted by the record, including Petitioner's own statements under oath. Petitioner cannot establish, in any event, that conduct by his attorneys resulted in prejudice, as he has not alleged that he would have pleaded not guilty and proceeded to trial if not for that conduct. [Id.]. Because Petitioner has not established a prima facie case for relief, he is not entitled to discovery. Roane, 378 F.3d at 403.

### D.     Motion to Expand Record

Petitioner seeks to expand the record to include a DEA investigation report and a "criminal history report" of the confidential informant involved in the investigation of Petitioner, both of which are attached to his motion. [Doc. 23]. The Court will allow the motion; however, for the reasons stated herein, the record of this case, even as expanded by Petitioner's filings, conclusively shows that Petitioner is entitled to no relief under Section 2255.

### E.     Motion for Reduction of Sentence

Petitioner seeks a reduction of his sentence based on his cooperation with law enforcement, arguing that his attorneys "were ineffective for not filing

for a reduction before sentencing." [Doc. 24 at 1]. For the reasons stated herein, Petitioner's claim is without merit and is therefore denied.

### F. Motion for Appointment of Counsel

Finally, Petitioner seeks the appointment of counsel to represent him in this Section 2255 proceeding. Prisoners have no constitutional right to counsel in a post-conviction proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004). Nonetheless, the Court may appoint counsel to represent a habeas petitioner when the interests of justice so require and the petitioner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, Petitioner has failed to demonstrate that the interests of justice warrant the appointment of counsel. See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001). Accordingly, Petitioner's request for the appointment of counsel is denied.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Petitioner is not entitled to relief.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in

order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

2.    Petitioner's five Motions to Amend, [Doc. 11, 12, 14, 17, 20], are **GRANTED**, but the Court finds that Petitioner is not entitled to relief as to any of the claims presented in the motions to amend, and such claims are hereby **DENIED** and **DISMISSED WITH PREJUDICE**.

3.    Petitioner's motion to expand the record [Doc. 23] is **ALLOWED**.

4.    Petitioner's motions for an evidentiary hearing [Docs. 16, 25], Petitioner's motion for reduction of sentence [Doc. 24], and Petitioner's motion for the appointment of counsel [Doc. 29] are all **DENIED**.

5.    The Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**    Signed: September 14, 2015

Martin Reidinger
United States District Judge